UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RH KIDS, LLC, | Case No. 2:12-cv-00949-KJD-RJJ |
| Plaintiff, | **ORDER** |
| v. | |
| MTC FINANCIAL, et al., | |
| Defendants. | |

Before the Court are competing motions for summary judgment filed by defendants MTC Financial, Countrywide Home Loans, Bank of America, Inc., and Mortgage Electronic Registration Systems, Inc. (MERS)[1] (#80) and plaintiff RH Kids, LLC (#82).[2] Bank of America moved first. RH Kids responded to oppose Bank of America's motion and itself moved for summary judgment. (#82). In one responsive pleading, Bank of America opposed RH Kids's motion and replied in support of its own summary judgment motion. (#85).

This real estate foreclosure case asks the Court to determine who holds superior title in a residential property located at 2704 Coventry Green Avenue, Henderson, Nevada 89074. To do so, the Court confronts two questions. First, did the so-called Federal Foreclosure Bar of 12 U.S.C. § 4617(j)(3) prohibit the HOA's otherwise valid non-judicial foreclosure of the Coventry Green property? And second, did Bank of America's attempt to ascertain the superpriority portion of the lien—amounting to nine months of delinquent assessments—preserve its interest in the property despite that foreclosure? The Court answers both questions in the affirmative and

---

[1] For clarity, the Court will refer to the Defendants collectively as "Bank of America" unless otherwise necessary.

[2] The original plaintiff in this case, Diakonos Holdings, LLC, was substituted by current plaintiff RH Kids, LLC by stipulation of the parties in September of 2018. (#79). For clarity, the Court will refer to plaintiff as RH Kids unless otherwise necessary.

therefore grants Bank of America's motion for summary judgment, denies RH Kids's motion, and enters judgment in favor of defendants.

I. **Factual and Procedural Background**

   A. **The Housing and Economic Recovery Act and Federal Foreclosure Bar**

Congress passed the Housing and Economic Recovery Act in response to the 2008 recession and its ensuing foreclosure crisis. The purpose of the act was to protect the fragile housing market by addressing the critical undercapitalization of the Federal Home Loan Mortgage Corporation (Freddie Mac) and Federal National Mortgage Association (Fannie Mae). It sought to ensure that the two companies "operated in a safe and sound manner . . . consistent with the public interest." 12 U.S.C. § 4513(a)(1)(B). To that end, the act subjected both Fannie Mae and Freddie Mac to increased oversight and government control.

The act created the Federal Housing Finance Agency and authorized it to place both Fannie Mae and Freddie Mac under the Agency's conservatorship, which it did in 2008. As conservator, the FHFA was responsible for supervising and winding up Fannie's and Freddie's affairs. 12 U.S.C. § 4617(a)(2). As conservatees, Freddie Mac and Fannie Mae assets received certain federal protection, including protection from non-consensual foreclosure. This has come to be known as the "Federal Foreclosure Bar." See id. § 4617(j)(3) ("No property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the property of the Agency").

   B. **The Foreclosure and Sale of 2704 Coventry Green Avenue**

Non-parties Luis and Mirna Alfaro purchased the Coventry Green property in August of 2007. (#80, at 3). At the time of the purchase, the property was part of the Cobblestone Homeowners' Association and was subject to the Association's Covenants, Conditions, and Restrictions (CC&Rs). (#10, at 2–3). The deed of trust listed the Alfaros as the borrowers, Bank of America as the lender, and MERS[3] as the beneficiary nominee. (#80, Exh. A). That deed of

---

[3] MERS is an electronic registry system that tracks the beneficial ownership and servicing rights within property-holding portfolios. See About MERSCORP Holdings, Inc., https://www.mersinc.org/about (last visited Mar. 15, 2019). While MERS is the recorded mortgagee of a property it may assign the loan to other servicers without having to re-record the deed each time. In essence, MERS remains the mortgagee giving the loan owners the flexibility to change the servicers in their loan portfolios quickly and efficiently. Id.

trust was recorded August 30, 2007. Id. Bank of America claims that Freddie Mac purchased the loan and obtained a security interest in the property the very next week. (#80, Exh. B, at 2–3). It also claims that Freddie Mac has not transferred or otherwise relinquished its ownership in the property. Id. at 3. In May of 2011, MERS recorded an assignment of its deed of trust to BAC Home Loans Servicing. (#80, Exh. C). Defendant Bank of America N.A. is successor by merger to BAC Home Loans Servicing. (#80, at 3).

At some point, the Alfaros defaulted on their mortgage payments and HOA assessments. That default prompted two separate foreclosure proceedings. The HOA struck first. In January of 2011, the HOA recorded a lien for delinquent assessments against the property through its agent Nevada Association Services. (#80, Exh. D). After the Alfaros failed to satisfy the outstanding lien, the HOA recorded a Notice of Default and Election to Sell again through its agent Nevada Association Services. (#80, at 5). In March of 2012, the Coventry Green Trust purchased the property at a public auction. Id. Coventry Green later conveyed its interest in the property to Diakonos Holdings, LLC—the original plaintiff in this case. (#80, at 6). Diakonos conveyed the property by quitclaim deed to RH Kids—the current plaintiff in this case. (#80, Exh. J).

After the HOA foreclosure, servicer Bank of America attempted to satisfy the outstanding superpriority-lien balance. Bank of America contacted Nevada Association Services by letter and requested a payoff invoice that would satisfy the superpriority portion of the HOA lien. (#80, Exh. G-1). Nevada Association Services did not respond. (#80, at 5). Shortly thereafter, the bank filed a Notice of Trustee's Sale pursuant to a Deed of Trust to sell the property at auction in May of 2012. (#10, at 3).

Before that sale, RH Kids filed this action in state court to halt foreclosure proceedings. Id. In addition to its request to enjoin the sale, RH Kids sought to quiet title in the Coventry Green property. Id. The state court enjoined the bank's foreclosure sale pending a determination of the rights in the property. Id. at 4. Bank of America then removed to this Court, which subsequently stayed the case pending the Ninth Circuit's decisions in two cases similar to this one.[4] Following the Ninth Circuit's issuance of those opinions in August of 2017, the Court

---

[4] Berezovsky v. Moniz, 869 F.3d 923 (9th Cir. 2017); Elmer v. JP Morgan Chase Bank, No. 15-17407, 707

lifted the stay. (#74). Discovery has closed, and the parties have filed their respective motions for summary judgment to which the Court now turns.

**II.     Legal Standard**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). It is available only where the absence of material fact allows the Court to rule as a matter of law. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322. Rule 56 outlines a burden shifting approach to summary judgment. First, the moving party must demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to produce specific evidence of a genuine factual dispute for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of fact exists where the evidence could allow "a reasonable jury [to] return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court views the evidence and draws all available inferences in the light most favorable to the nonmoving party. Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d 1100, 1103 (9th Cir. 1986). Yet, to survive summary judgment, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

**III.    Analysis**
   **A. The Federal Foreclosure Bar Preserved Freddie Mac's Property Interest Because Freddie Mac Owned the Loan at the Time of the HOA Foreclosure and Did not Consent to Foreclosure**

Freddie Mac's interest in the Coventry Green property is preserved by the Federal Foreclosure Bar of 12 U.S.C. § 4617(j)(3). Accordingly, the HOA's foreclosure was invalid absent consent. It is now settled law in this Circuit that § 4617's Federal Foreclosure Bar preempts any state law that would allow extinguishment of a verifiable Freddie Mac property interest without its consent. See Berezovsky v. Moniz, 869 F.3d 923, 926 (9th Cir. 2017) (the Federal Foreclosure Bar is a "prohibition on nonconsensual foreclosure); Skylights LLC v. Byron, 112 F.Supp.3d 1145, 1152 (D. Nev. 2015) (the plain language of 12 U.S.C. § 4617(j)(3) bars an HOA foreclosure "regardless of the HOA lien's super-priority under state law"). The

---

Fed.Appx. 426 (9th Cir. Aug. 31, 2017) (unreported).

- 4 -

Nevada Supreme Court has joined the Ninth Circuit and held that the Foreclosure Bar preempts Nevada law. Saticoy Bay, LLC v. Fed. Nat'l Mortg. Ass'n., 417 P.3d 363 (Nev. 2018).

RH Kids does not dispute that the Foreclosure Bar generally preempts state foreclosure law. Instead, it brings three arguments to avoid the Bar's application here. First, RH Kids argues that the Bar is irrelevant because Freddie Mac did not have an interest in the loan at the time the HOA foreclosed. (#81, at 3). If true, the FHFA's conservatorship over Freddie Mac would offer no reprieve from this valid state-law foreclosure. Second, RH kids argues that even if Freddie Mac did have an interest in the property, its failure to record voided that interest. Id. at 7 (citing NRS § 111.325). Finally, RH Kids contends that the Foreclosure Bar cannot preempt Nevada criminal statutes such as NRS § 205.395, which prohibits false representations concerning title— a statute it alleges Bank of America has violated.

The Court turns first to RH Kids's argument that Freddie Mac did not have an interest in the property at the time of the foreclosure. The crux of this argument is that Bank of America failed to present sufficient evidence to demonstrate that Freddie Mac took an interest in the property in September of 2007 like it claims. (#81, at 3–5). It contends that Bank of America's proffered evidence—Freddie Mac internal records and declarations of employees—is inferior to the recorded title, which does not bear Freddie Mac's name. Id. at 3. As a result, it argues that there is a material issue of fact regarding whether Freddie Mac's ownership implicates the Foreclosure Bar at all.

However, the evidence that RH Kids urges the Court to disregard is the very evidence the Ninth Circuit found sufficient to demonstrate a Freddie Mac property interest in Berezovsky. 869 F.3d at 932 n.8. Before Berezovsky, it was unclear what evidence Freddie Mac needed to provide to demonstrate its property interests. Compare Green Tree Servicing, LLC v. Collegium Fund, LLC, No. 2:15-cv-0700-GMN-GWF, 2016 WL 5429652 at *3 (Sept. 27, 2016) (finding that Fannie Mae owned an interest in the disputed property based on employee declarations and supporting business records) with Nationstar Mortg. LLC v. D'Andrea Comm. Ass'n, No. 3:15-cv-00377-RCJ-VPC, 2017 WL 58582 at *3 (Jan. 4, 2017) (finding a question of fact whether Fannie Mae held a property interest after examining similar employee declarations and Fannie

Mae business records). However, <u>Berezovsky</u> clarified that Freddie Mac's detailed business records coupled with employee declarations to explain those records was enough to show genuine ownership of the disputed property. 869 F.3d at 932–33.

Here, the Court has examined the same evidence as did the Ninth Circuit in <u>Berezovsky</u>, and it comes to the same conclusion; Freddie Mac owned an interest in this property at the time of the HOA foreclosure. Bank of America provided the declaration of Dean Meyer who is a Freddie Mac employee competent to testify on behalf of the enterprise. (#80, Exh. B). Meyer testified that "Freddie Mac acquired ownership of the [Coventry Green] Loan, which specifically includes the Note and the Deed of Trust, on or about September 4, 2007 and has owned it ever since." <u>Id.</u> at 3. To support his declaration, Meyer also submitted authenticated printouts of the Freddie Mac internal loan processing system, MIDAS. (#81, Exh. B-1–B-3). These printouts corroborate Meyer's declaration that Freddie Mac owns 100% of the loan and that it owns the loan to this day. <u>Id.</u> Under <u>Berezovsky</u>, Bank of America has provided evidence that Freddie Mac owned the loan at the time the HOA foreclosed.

Nevertheless, Summit argues that Freddie Mac surrendered its interest in the property when it failed to promptly record. Admittedly, Nevada law generally requires recording of a lien before that lien is enforceable. <u>Berezovsky</u>, 869 F.3d at 932 (citing NRS § 106.210). However, the recorded instrument need not list the note owner by name. <u>Id.</u> Often, the recorded note and the deed of trust identify different parties. This "split" between the note owner and the beneficiary recorded on the deed of trust does not void either instrument. <u>Id.</u> (citing <u>Edelstein v. Bank of N.Y. Mellon</u>, 286 P.3d 249, 259 (Nev. 2012)). It merely creates a question of which entity has authority to foreclose. <u>Id.</u> Principles of agency determine which party has the power to foreclose on its interest. <u>See id.</u> at 258–59. A principle-agent relationship arises where the note owner assigns a beneficiary but retains authority to enforce its interest through foreclosure. <u>Berezovsky</u>, 869 F.3d at 932.

Freddie Mac and Bank of America shared a principal-agent relationship as owner and servicer. Freddie Mac's relationship with its loan servicers and beneficiaries is governed by the "Guide." (#80, at 15–16). The Guide's rules and regulations confirm that Freddie Mac retained

ownership of any loan under its portfolio and had authority to direct the actions of its beneficiaries and servicers. For instance, Freddie Mac could "require the Seller or the Servicer . . . to make such . . . assignments and recordations of any of the Mortgage documents so as to reflect the interests of Freddie Mac" at any time. <u>Freddie Mac, Single-Family Seller/Servicer Guide</u> § 1301.10 (2019), http://www.freddiemac.com/singlefamily/pdf/guide.pdf ("The Guide"). Also, Freddie Mac could compel its agents to make assignments that Freddie Mac deemed proper. <u>Id.</u> § 6301.6 ("Freddie Mac may, at its sole discretion and at any time, require a Seller/Servicer, at the Seller/Servicer's expense, to prepare, execute and/or record assignments of the Security Interest to Freddie Mac"). Because Bank of America was agent to Freddie Mac, Freddie Mac's failure to promptly record its interest did not invalidate its ownership in this property.

Finally, RH Kids argues that the Federal Foreclosure Bar does not preempt NRS § 205.395, which prohibits a party from knowingly misrepresenting ownership on title. (#81, at 5). This argument arises out of a 2011 assignment of the deed of trust wherein MERS transferred its interest in the loan to Bank of America. (#80, Exh. C). RH Kids argues that if MERS knew that Freddie Mac was the owner of the deed of trust when it assigned the deed to Bank of America, that assignment was a misrepresentation under § 205.395—a class C felony. (#81, at 5). This argument, however, starts from the incorrect premise that Bank of America was the owner of the deed after the assignment. MERS was merely the temporary nominee who assigned its own servicing rights to Bank of America in 2011. Freddie Mac remained the owner of the deed of trust despite not being listed on the title. Accordingly, the 2011 assignment did not violate NRS § 205.395. More importantly, that assignment did not affect the application of the Federal Foreclosure Bar.

In sum, Bank of America has demonstrated that Freddie Mac indeed owned this loan at the time the HOA foreclosed. Its ownership of the loan created a property interest that was protected by 12 U.S.C. § 4617(j)(3)'s bar on non-consensual foreclosures. Neither Freddie Mac nor FHFA consented to that foreclosure. (#80, Exh. K). As a result, the HOA foreclosure did not extinguish Freddie Mac's interest in the property.

### B. Bank of America's Lack of Tender is Excused Because the HOA Trustee's Practice was to Reject Such Payments

In addition to the Federal Foreclosure Bar's preservation of Freddie Mac's interest in the property, the Court also grants summary judgment because Bank of America was excused from the tender requirement of the superpriority lien amount. Prior to the HOA foreclosure, Bank of America contacted Nevada Association Services by letter and requested a payoff amount to satisfy the HOA's superpriority lien balance. (#80, Exh. G).[5] In that letter, Bank of America acknowledged that NRS § 116.3116 granted the HOA a superpriority lien that subordinated the Bank's interest. Id. Bank of America was unaware of the lien amount but assured Nevada Association Services that "whatever [that amount] is . . . [the Bank] hereby offers to pay that sum upon presentation of adequate proof" by the HOA. Id. Nevada Association Services refused to respond to the Bank's request, which was consistent with the company's policies and procedures at that time. (#80, Exh. H, at 18–19). Because Nevada Association Services refused to respond, Bank of America could not verify the superpriority lien amount. It therefore did not tender a check to the HOA.

The Nevada Supreme Court addressed the tender issue in Bank of America, N.A. v. SFR Inv. Pool 1, LLC, 427 P.3d 113 (Nev. 2018). There, it clarified that a bank's attempt to tender payment of the superiority lien amount prior to foreclosure preserves the bank's interest in the property. Id. at 118. The Nevada Supreme Court recently reinforced that rule, and this Court has followed suit. See Bank of America, N.A. v. Jessup, LLC, Series VII, 135 Nev. Adv. Op. 7 *1 (2019) ("a deed of trust beneficiary can preserve its deed of trust by tendering the superpriority portion of the HOA's lien before the foreclosure sale is held"); see also Deutsche Bank Nat'l

---

[5] The letter is dated January 20, 2015, which is nearly three years after the HOA foreclosure in this case. To explain the apparent delay, Bank of America presented the affidavit of an employee of law firm Miles Bauer who Bank of America retained to process this tender. (#80, Exh. G). There, the affiant explains that the letter is incorrectly dated due to the "Automatic Date Change function in Microsoft Word." Id. (internal quotation marks omitted). Accompanying the affidavit, MTC Financial provided an authenticated internal record that shows Miles Bauer sent the letter on December 6, 2011 before the HOA completed the foreclosure process. Admittedly, this discrepancy could create a genuine issue of fact for trial. Here however, RH Kids has not disputed the date of the letter, nor has it presented evidence that Nevada Association Services did not receive the letter in December of 2011 as the affidavit states. Accordingly, RH Kids has not carried its burden to demonstrate a genuine issue of fact whether Bank of America attempted to tender payment prior to the HOA foreclosure.

- 8 -

1    Trust Co. v. SFR Inv. Pool 1, LLC, No. 2:17-cv-00457-KJD-GWF, 2018 WL 5019376 (D. Nev.
2    Oct. 16, 2018) ("tender of the superpriority amount prior to foreclosure results in buyer taking
3    property subject to deed of trust").

4    Generally, valid tender requires more than what Bank of America did here, namely
5    requesting the outstanding superpriority lien amount and promising to pay upon receipt of that
6    amount. Jessup, 135 Nev. Adv. Op. at *3. Indeed, it is the general rule that "a promise to make a
7    payment at a later date or once a certain condition has been satisfied cannot constitute a valid
8    tender." Id. However, the bank's offer to pay the superpriority lien combined with a rejection of
9    that offer excuses the bank from the tender requirement. Id. at *4 (an offer to pay combined with
10   a rejection of that offer "cure[s] the default as to that portion of the lien such that the ensuing
11   foreclosure sale [does] not extinguish the first deed of trust"). In other words, Bank of America's
12   interest in the property is preserved if it (1) attempted to satisfy the superpriority lien amount and
13   (2) Nevada Association Services made clear that it would reject the bank's tender.

14   That is what happened here. Bank of America's letter requested the superpriority lien
15   amount, acknowledged that NRS § 116.3116 granted the HOA a lien superior to its own, and
16   offered to tender the nine-month delinquency. (#80, Exh G-1, at 1). Bank of America never
17   received a response, which was consistent with Nevada Association Services' policy at that time.
18   (#80, Exh. H, at 18) (explaining that Nevada Association Service's position was to ignore
19   requests like Bank of America's under the Fair Debt Collections Practices Act). Accordingly,
20   Bank of America could not ascertain the delinquent balance necessary to satisfy the HOA
21   superpriority lie.

22   Nevertheless, RH Kids contends that Bank of America's failure to tender a physical
23   check still extinguished the bank's interest because its mere inquiry is insufficient. The problem
24   is that Bank of America fared no better had it calculated the superpriority lien amount and sent a
25   check. Nevada Association Services would have rejected tender and foreclosed anyway. Id. at
26   19–21 (despite receiving a check or request for a ledger balance, Nevada Association Services
27   would not respond except to "[send the bank] a notice of sale"). Nevada Association Services'
28   corporate counsel, Chris Yergensen, testified in a similar case that during that time, it was the

company's policy not to provide the delinquent superpriority lien amount. Instead, it would mail a notice of sale and proceed with the foreclosure despite the bank's attempt to satisfy the outstanding balance. Id. at 22. RH Kids does not dispute that policy in its briefing, nor does it provide evidence that Bank of America's attempt to tender payment was not futile. Accordingly, the Court finds that Bank of America was excused from sending valid tender because Nevada Association Services made it clear that it would reject that tender and proceed with its planned foreclosure.

**IV.    Conclusion**

Accordingly, it is **HEREBY ORDERED** that defendants' Motion for Summary Judgment (#80) is **GRANTED**;

It is **FURTHER ORDERED** that plaintiff RH Kids's Motion for Summary Judgment (#82) is **DENIED**;

The Clerk of Court Shall enter **JUDGMENT** in favor of defendants MTC Financial Inc. Countrywide Home Loans, Inc., Bank of America, Inc., and Mortgage Electronic Registration Systems, Inc.

Dated this 18th day of March, 2019.

_____
Kent J. Dawson
United States District Judge